MARK ANTHONY SMILEY,

                    Plaintiff,

v.                                                   Case No. 24-cv-1192-pp

DR. PHILLIP WHEATLEY, *et al.*,

                    Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (DKT. NO. 11) AND DENYING PLAINTIFF'S MOTION FOR ORDER (DKT. NO. 19)**

On December 3, 2024, the court screened plaintiff Mark Anthony Smiley's complaint filed under 42 U.S.C. §1983[1] and allowed him to proceed on claims under federal and state law against Dr. Phillip Wheatley, Assistant Health Services Unit (HSU) Manager Kelly Pelky and HSU Manager Julie Ludwig. Dkt. No. 9. The court recounted that the plaintiff's "primary allegation" was that those defendants "ha[d] not provided him adequate medical treatment for his various ailments." Id. at 5. The court allowed the plaintiff to proceed on a claim under the Eighth Amendment and under state law for medical malpractice. Id. at 6–7. The court did not allow the plaintiff to proceed against the other defendants named in the caption or listed on other pages of his complaint. Id. at 7–9. The court explained that the plaintiff could proceed only against persons who "'caused or participated in a constitutional violation.'" Id. at 8 (quoting

---

[1] The plaintiff is representing himself.

Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003)). Finally, the court explained that the plaintiff could seek damages and that the court "may be able to order the prison to provide the plaintiff the accommodations he seeks," but the court could not "order the defendants suspended without pay." Id. at 9.

On January 10, 2025, the court received the plaintiff's motion for leave to file an amended complaint, to which he attached a proposed amended complaint. Dkt. No. 11. The plaintiff says that he "was ignorant in rushing to e-file" his original complaint "due to [his] sickle cell anemia." Id. at 1. He says his amended complaint will "address all the mistakes [he] made by naming defend[a]nts" and will "reference the documents [he] sent." Id. The plaintiff included a three-page "reference of documents" that describes the 267 pages of exhibits he attached to his original complaint. Id. at 2–4. The plaintiff says that he does not "want a strike from pursuing the help [he] seek[s] from those who pursecute [sic] [him] through [his] health and mental health." Dkt. No. 11 at 1.

Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course" within twenty-one days of service or within twenty-one days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). The plaintiff filed his proposed amended complaint more than twenty-one days after service of his original complaint on the defendants but before they filed a responsive pleading. That means his motion is unnecessary, and that he could have filed the amended complaint without the court's permission. The court will review the plaintiff's proposed amended complaint under the standards

explained in the first screening order to determine whether it states a proper claim for relief. See Dkt. No. 9 at 2–3.

I. **Amended Complaint (Dkt. No. 11-1)**

A. The Plaintiff's Allegations

The proposed amended complaint renames as defendants Dr. Wheatley, Assistant HSU Manager Pelky and HSU Manager Ludwig, against whom the court allowed the plaintiff to proceed. Dkt. No. 11-1 at 1. It also renames defendants the court dismissed in the first order—former Oshkosh Correctional Institution Warden Cheryl Eplett, Dr. Michelle Hormes and H. Hollander. Id. The amended complaint includes a three-page list of names like the list of names in the original complaint. Id. at 3–5. The plaintiff does not say which of these persons are renamed from the original list and which are newly named or if there are any differences between the two lists of names.

The allegations of the amended complaint begin on page five, where the plaintiff realleges that he underwent a tooth extraction on December 5, 2021 that caused him "to have a sickle cell crisis." Id. at 5. The plaintiff realleges that Dr. Wheatley provided him tramadol for three days before taking him off that medication and giving him falsified information about his medical conditions. Id. He again says that he has "had multiple medical sistuations [*sic*] happen since January of 2019." Id. He says the 267-page attachment to his original complaint will "show multiple health officials documenting, falsifying medication [for his] mental-health and well-being under false pretense and giving false-narratives of a chain of events on [his] behalf." Id. at 5–6.

The plaintiff alleges that he wrote to Wheatley, Ludwig, Pelky and Hollander but was not provided "the proper follow-up appointment with" the University of Wisconsin—Madison. Id. at 6. He lists six doctors who he says did not provide him "the proper treatment and medications" and who falsified "illegal entries on [his] behalf concerning medications." Id. He lists fifteen additional registered nurses or doctors who "have also participated and committeed [*sic*] fraud under Hippa and used [his] protected health information to defraud [him] from medical care for there [*sic*] own personal gain." Id. at 6–7. He says that another registered nurse "falsified her job title and defrauded her position under false pretenses of the Central Pharmacy when it comes to [his] well being and medications." Id. at 7. The plaintiff lists an additional ten persons who he says "also have participated under omission of fraudulent documentarian of entries to partake in using [his] protected health information to commit fraud and deprive [him] on numerous of documents [*sic*] and exhibits to cover up the false pretense in the 5 years" that he has been at Oshkosh. Id.

The plaintiff alleges that on December 5, 2021—the same day as his tooth extraction—a sergeant issued him a conduct report for taking his cellmate's pain medication instead of providing him medical attention. Id. at 7–8. He says that Warden Eplett and the security director "who oversees conduct report dated December 5th of 2021" covered up and went "along with the narrative from health officials and others concerning [his] whereabouts and health status due to being in segregation." Id. at 8. He says a lieutenant "gave [him] 30 days

disciplinary due to getting the proper help from UW Madison from the 6th of [D]ecember until the 16th or 17th." Id. at 8–9.

The plaintiff says that his 267 pages of documents "will show other registered nurses . . . who have also played apart [*sic*] in violating [his] rights under hippa, fraud and omission by using [his] protected health information to defraud [him] from medications and nutrients to prevent [him] from having less sickle cell crisis and flair ups [*sic*]." Id. at 9. The plaintiff lists six people who he says are responsible for those actions and then lists two others who he says are "as well for going [*sic*] this fraud with multiple named defendants in there [*sic*] indivi[d]ual capacity has used there [*sic*] expertise to add emotional distress to minimize [his] health and well being." Id. He says that "these named defend[a]nts [he] named have lied, misu[s]ed, and abused [his] health and mental health from seeking minimum community custody and secure minimum because [he is] seeking help due to the severeness of what these defend[a]nts can enter into the computer on there [*sic*] own accord." Id. at 9–10.

The plaintiff alleges that various "psychologist and psychiatrist can mentally and emotionally and verbally if not physically can [*sic*] abuse [him] with conduct reports for not taking anxiety and depression medications and labeling [him] multi-disciplinary to prevent [him] from pursuing justice." Id. at 10. He lists four psychologists, psychiatrists or other mental-health officials who he says have tampered with and falsified "entries of [his] incarceration" since January 2018 or 2019. Id. He names a unit manager who he says "participated in the violation of [his] rights by a show of power and harassment by being in the

social workers office . . . both badgering [him] and frustrating [him] of taking prescribed psychological medication to not pursue legal actions." Id. He says that this unit manager, a social worker and a psychologist "harassed and continued to be persist[e]nt in [him] taking prescribed psychriatrict [*sic*] medication for which [he] refused." Id. at 10–11. He says that these defendants have continually told him "to not file a lawsuit but to pursue minimum by tampering with [his] documents and exhibits." Id. at 11. He names two other psychologists who he says "as well have used [his] personal health information" from other correctional institutions "to document false and depressing information from 8 years ago to habitually punish [him] from past incarceration and falsifying [his] last known occur[e]nces . . . to justify there [*sic*] means on [his] behalf." Id.

The plaintiff alleges that Warden Eplett "has failed to properly impl[e]ment" administrative code, Wisconsin Division of Adult Institutions (DAI) policy and procedures under the Health Insurance Portability and Accountability Act (HIPAA). Id. He says that employees assigned to review his administrative complaints are "suppose[d] to act on [his] behalf under policy of State and federal for the adult institution facility," but that "they have violated that right because there [*sic*] not reporting the fraud of those of their coworkers for civil liability and civil rights action." Id. at 11–12. He asserts that "every named defendant has violated [his] rights of due process to seek justice." Id. at 12.

The amended complaint, like the original, seeks damages of either $420 million or $750,000 from each defendant. Id. at 13. The plaintiff again asks the

court to order Oshkosh to provide him various medical accommodations "until 2029," and he newly requests that "every institution . . . have the BHS and Human Services complaint free of charge (DHHS 700) in every library." Id. at 13–14. At the end of his prayer for relief, the plaintiff again lists, without elaboration, legal decisions and potential claims including deliberate indifference, medical malpractice, "fraudulent writings," omission, pain and suffering, cruel and unusual punishment, "element of payable claim," fraud and "Hippa." Id. at 14.

    B.    <u>Analysis</u>

The amended complaint is deficient in several ways. It does not comply with the court's local rules for amended pleadings. Those rules require that a party moving to amend "state specifically what changes are sought by the proposed amendments." Civil Local Rule 15(b) (E.D. Wis.). The plaintiff does not say what specific changes he proposes. He says that he "was ignorant" and rushed to file his original complaint, and he asks to amend to "address all the mistakes [he] made." Dkt. No. 11 at 1. The only mistake he identifies is "naming defendants," but he does not say how he corrected that mistake or what additional information he has added. The court could deny his motion solely because it does not comply with the court's local rules for amended pleadings. <u>See</u> <u>McCurry v. Kenco Logistics Servs., LLC</u>, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (district courts may strictly enforce local rules against *pro se* parties). The court will not deny the motion solely for failure to comply with the local rules.

A bigger problem with the proposed amended complaint is that it seeks to proceed against numerous defendants on unrelated claims spanning at least the last six years. Although a plaintiff may bring multiple claims against a single party, a plaintiff cannot bring *unrelated* claims against different defendants in the same case. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). "Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related transactions." Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012). In other words, the plaintiff may bring in one lawsuit his claims against Wheatley, Pelky and Ludwig; the court already has allowed him to proceed on those claims as alleged in his original complaint. But he may not add claims against security staff, psychological staff and complaint examiners unless those claims "arise 'out of the same transaction, occurrence, or series of transactions or occurrences.'" Id. (citing Fed. R. Civ. P. 20(a)(1)(A)) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot.").

The proposed amended complaint violates Rules 18 and 20 because the plaintiff seeks to bring multiple unrelated claims against several defendants or groups of defendants. He first realleges that Wheatley, Pelky and Ludwig have not provided him adequate medical attention. He then alleges that dozens of doctors, registered nurses and others have falsified his medical records and committed fraud under HIPAA. He then says a sergeant gave him a conduct report that Warden Eplett and the security director covered up and/or approved.

He then lists other registered nurses who also committed fraud or falsified his medical documents; it is unclear whether these are the same persons or the same acts of fraud. He then says that psychologists or psychiatrists have issued him conduct reports, harassed him and falsified his incarceration records to keep him from filing lawsuits. Finally, he alleges that complaint examiners have failed to report the alleged fraud of the others. It is not clear which of these claims have defendants in common, if any. Nor is it clear when most of these events occurred. The plaintiff says some misconduct has been ongoing for five years, and elsewhere he alleges that his records have been altered since 2018 or 2019. That could mean some of these claims are untimely under Wisconsin's three-year statute of limitations. See Huber v. Anderson, 909 F.3d 201, 207 (7th Cir. 2018) (citing 2017 Wis. Act 235 (eff. Apr. 5, 2018)).

Ordinarily, the court could cure this defect "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21). But the proposed amended complaint seeks to proceed against *dozens* of defendants on several potential claims, many of which have additional deficiencies. Given the volume of defendants, claims and deficiencies in the proposed amended complaint, the court will not attempt to sever the amended complaint into multiple new lawsuits. The court will explain the additional problems with the claims in the proposed amended complaint, problems that warrant denying the plaintiff's motion for leave to file the proposed amended complaint.

Another overarching problem with the claims in the proposed amended complaint is their generality. The proposed amended complaint, like the original, lists several putative claims for relief. It says more about those potential claims than the original, alleging that various defendants falsified the plaintiff's records or "participated and committed fraud under [HIPAA]." But the plaintiff does not provide specific information about instances when any defendant altered his records or how. He couches his allegations in vague and confusing language and names several allegedly responsible defendants. As the court explained in the previous order, the "plaintiff 'must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right.'" Dkt. No. 9 at 9 (quoting Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000)). The plaintiff's general allegations that a group of persons collectively acted in the same way to violate his rights at an unspecified time do not satisfy that standard and are insufficient to state a claim against any person. See Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009) (affirming that "vague phrasing" in complaint that certain defendants "had engaged in certain acts or deprived [plaintiff] of his constitutional rights . . . does not adequately connect specific defendants to illegal acts"); Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008) (explaining that a plaintiff cannot rely on "vague references" to defendants "without specific allegations tying the individual defendants to the alleged unconstitutional conduct").

Even where the plaintiff specifies who he believes was involved in various allegations, many of his allegations simply do not state a federal claim. The

10

Case 2:24-cv-01192-SCD   Filed 02/10/25   Page 10 of 13   Document 20

court reiterates that the plaintiff cannot proceed on a claim under HIPAA because "HIPAA does not provide citizens with a private right of action." Dkt. No. 9 at 7 (citing Carpenter v. Phillips, 419 F. App'x 658, 659 (7th Cir. 2011)). The plaintiff also seeks to proceed on allegations that various defendants violated DAI policy and procedures or state laws. But a violation of a state law alone does not provide a basis for a claim under §1983, which protects only against violations of federal law or the federal Constitution. See Wells v. Caudill, 967 F.3d 598, 602 (7th Cir. 2020) (citing cases). Nor does §1983 protect against violations of prison policies or procedures. See Hunter v. Mueske, 73 F.4th 561, 567 & n.1 (7th Cir. 2023); Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017).

The plaintiff also cannot proceed against persons who work as complaint examiners. Complaint examiners do not act on the plaintiff's behalf and are not responsible for reporting his allegations of fraud or civil rights violations. See Estate of Miller v. Marberry, 847 F.3d 425, 428–29 (7th Cir. 2017). And more important, prison officials who "merely review[] a grievance or appeal cannot be liable for the conduct forming the basis of the grievance." Stankowski v. Carr, No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024) (citing Owens v. Evans, 878 F.3d 559, 563 (7th Cir. 2017)).

Given these problems, the court will deny the plaintiff's motion to amend his complaint and will not allow the plaintiff to proceed on his proposed amended complaint. The court has allowed the plaintiff to proceed on his primary allegations against defendants Wheatley, Pelky and Ludwig. The court

11

encourages the plaintiff to allow the claims he already has brought—the ones on which the court has allowed him to proceed—to move past the pleading stage. The court reminds the plaintiff that it will issue a separate order setting a deadline for completing discovery on those claims; during the discovery periodo he will be allowed to obtain the information that he believes he needs to prove his claims.

The court acknowledges the plaintiff's concern about receiving a strike. The plaintiff could have received a strike only if the court determined that his original complaint failed to state a claim or was frivolous or malicious. See 28 U.S.C. §§1915(e)(2)(B), 1915A(b)(1). The court did not find that his complaint failed to state a claim or was frivolous or malicious. It concluded that the plaintiff had stated plausible claims and it allowed him to proceed on those claims. That means that he will not receive a strike in this litigation, even though the court is not allowing him to proceed on his amended complaint.

## II. Motion for Order (Dkt. No. 19)

Finally, the plaintiff filed a motion asking the court to "order Oshkosh Correctional HSU, PSU, Dental Service and optomoligist [*sic*] as long as the Inmate Complaint [*sic*] to provide [him] copies of [his] entire record so [he] can send clean copies of the exhibit to the courts." Dkt. No. 19. Although this request is difficult to understand, the court believes that the plaintiff is asking the court to order Oshkosh to provide him a copy of his "entire record," which the court presumes means his entire incarceration record.

12

Case 2:24-cv-01192-SCD   Filed 02/10/25   Page 12 of 13   Document 20

The court will deny this request. It is not clear why the plaintiff believes he needs his entire incarceration record to proceed with this lawsuit. Because the court is not allowing him to proceed on his proposed amended complaint, many of the documents he wants copies of likely are irrelevant to the claims in the lawsuit. The court reiterates that during discovery, the plaintiff can seek the information he believes he needs to prove his claims against Wheatley, Pelky and Ludwig.

### III. Conclusion

The court **DENIES** the plaintiff's motion for leave to amend his complaint. Dkt. No. 11. The original complaint remains the operative complaint.

The court **DENIES** the plaintiff's motion for a court order for copies of his incarceration record. Dkt. No. 19.

The court **REMINDS** the parties that the *must not* begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 10th day of February, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**